IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| MONICA K.,[1] | : | Case No. 3:21-cv-00113 |
| Plaintiff, | : | |
| | : | Magistrate Judge Caroline H. Gentry |
| vs. | : | (by full consent of the parties) |
| | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

## DECISION AND ORDER

**I.   INTRODUCTION**

Plaintiff filed an application for Disability Insurance Benefits in January 2018. Plaintiff's claim was denied initially and upon reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. This matter is before the Court on Plaintiff's

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

Statement of Errors (Doc. 12), the Commissioner's Memorandum in Opposition (Doc. 13), Plaintiff's Reply (Doc. 14), and the administrative record (Doc. 8).

## II. BACKGROUND

Plaintiff asserts that she has been under a disability since December 1, 2016. At that time, she was forty-five years old. Accordingly, Plaintiff was considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c).[2] Plaintiff has a "high school education and above." *See* 20 C.F.R. § 404.1564(b)(4).

The evidence in the administrative record is summarized in the ALJ's decision (Doc. 8-2, PageID 48-59), Plaintiff's Statement of Errors (Doc. 12), the Commissioner's Memorandum in Opposition (Doc. 13), and Plaintiff's Reply (Doc. 14). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## III. STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

---

[2] The remaining citations will identify only the pertinent Disability Insurance Benefits Regulations, as they are similar in all relevant respects to the corresponding Supplemental Security Income Regulations.

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651

3

(6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## IV. THE ALJ'S FACTUAL FINDINGS

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. The ALJ made the following findings of fact:

Step 1: Plaintiff has not engaged in substantial gainful activity since December 1, 2016, the alleged onset date.

Step 2: She has the severe impairments of "multiple sclerosis; overactive bladder; headaches; depression; anxiety; and a very mild neurocognitive disorder."

Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Her residual functional capacity (RFC), or the most she can do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of sedentary work as defined in 20 CFR § 404.1567(a), subject to the following limitations: "(1) occasional crouching, crawling, kneeling, stooping, balancing, and climbing of ramps and stairs; (2) no climbing of ladders, ropes, and scaffolds; (3) no work around hazards, such as unprotected heights or dangerous machinery; (4) no driving of automotive equipment; (5) no exposure to extreme heat; (6) limited to performing unskilled, simple, and repetitive tasks; (7) no fast-paced production work or

4

>>jobs that involve strict production quotas; and (8) limited to performing jobs that involve very little, if any, change in the job duties or the work routine from one day to the next."
>
>>She is unable to perform any of her past relevant work.
>
>Step 5: Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform.

(Doc. 8-2, PageID 50-58.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.* at PageID 58.)

## V. LAW AND ANALYSIS

Plaintiff asserts that the ALJ's RFC is not supported by substantial evidence because the ALJ "failed to incorporate any manipulative limitations that are supported by the record." (Doc. 12, PageID 1103, 1110.) Because the Court finds that the ALJ's conclusions regarding Plaintiff's RFC are supported by substantial evidence, the ALJ's decision must be affirmed.

### A. Applicable Law

A claimant's residual functional capacity (RFC) is the most that she can do in a work setting despite physical and mental limitations caused by her "impairment(s), and any related symptoms, such as pain." 20 C.F.R. § 404.1545(a)(1). The ALJ is charged with the final responsibility for assessing a claimant's RFC and must base it on all relevant evidence in the record. 20 C.F.R. §§ 404.1527(d)(2), 404.1545(a)(1). Relevant evidence includes "information about the individual's symptoms and any 'medical source statements'—i.e., opinions about what the individual can still do despite his or her impairment(s)—submitted by an individual's treating source or other acceptable medical

5

sources." SSR 96-8p, 1996 SSR LEXIS 5, *5-6 (July 2, 1996). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Id*. at *20.

### B. The ALJ's RFC

Plaintiff contends that the ALJ did not account for Plaintiff's reports of worsening paresthesia in her hands. (Doc. 12, PageID 1111.) She asserts:

> The evidence supports a finding that Plaintiff is more limited in her ability to use her bilateral hands than found by the ALJ. . . . Here, the ALJ is playing doctor and rejecting not only objective findings from MRIs but also physical examinations from Plaintiff's treating physicians that were objective in nature and substituting his own interpretation of the evidence.

(*Id.*) These arguments are not well-taken.

The ALJ's RFC findings, including his conclusion that no manipulative limitations are warranted, are supported by substantial evidence. The ALJ acknowledged Plaintiff's subjective complaints about her hand issues. (Doc. 8-2, PageID 54-55.) He acknowledged Plaintiff's testimony that she experiences numbness and tingling in her hands and has difficulty holding things. (*Id.* at PageID 54.) The ALJ also noted Plaintiff's complaints to some providers that she experiences intolerance of heat and some upper extremity loss of sensory functioning. (*Id.*)

The ALJ then summarized the medical records documenting Plaintiff's treatment for her hand complaints. (Doc. 8-2, PageID 51, 54-55.) The ALJ noted that Plaintiff's right carpal tunnel syndrome was diagnosed as mild in severity and that a September 2017 examination showed some mildly positive compression testing. (Doc. 8-2, PageID 51; *see also* Doc. 8-7, PageID 695). The diagnosis was not confirmed by EMG testing,

6

and the examination otherwise showed good sensation, intact motor functioning, and full range of motion and full strength of the thumb, fingers, and wrist. (*Id.*)

The ALJ summarized the other objective evidence related to Plaintiff's upper extremity complaints. (Doc. 8-2, PageID 54-55.) The ALJ found that a few examinations showed decreased sensation to light touch on the right but that many other examinations showed intact sensation and intact motor functioning. (*Id.* at PageID 55.) Although Plaintiff complained of right-handed paresthesia on several occasions, an examination in August 2016 showed only a very mild right-sided ataxia with slowed fine finger movement, slightly decreased (4+ out of 5) strength, and a moderate decrease in sensation. (Doc. 8-7, PageID 501.) In August 2017, an examination showed decreased sensation to light touch in the right hand. (*Id.* at PageID 600.) An examination in June 2018 showed slightly decreased (4+ out of 5) strength in the hands and decreased temperature in the upper extremities, but Plaintiff otherwise exhibited normal finger movements with no tremors, ataxia, or other abnormal movements. (Doc. 8-8, PageID 970). Numerous other examinations showed no significant abnormalities, and generally documented full strength, intact sensation, and normal coordination. (Doc. 8-7, PageID 520-21, 549, 584, 617 Doc. 8-8, PageID 829, 861, 867, 869, 873, 877, 879.)

The ALJ found that on balance, the evidence did not support Plaintiff's allegations of symptom severity and that no manipulative limitations were warranted in the RFC. (Doc. 8-2, PageID 53-54.) The Court concludes that the ALJ's findings are supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept

7

as adequate to support a conclusion." *Biestek*, 139 S.Ct. at 1154. The Court cannot determine whether the evidence might support a different result. *Id*.

Plaintiff argues that the ALJ's findings are contradicted by brain MRI reports, a cervical spine MRI report, and physical examinations. (*Id.* at PageID 1112.) This argument is not well-taken. The MRI reports are sufficient to establish multiple sclerosis as a diagnosis, but the pathology does not directly correlate to any functional deficits. (*E.g.,* Doc. 8-7, PageID 503-04, 725-26; Doc. 8-8, PageID 840-41.) While the physical examination that Plaintiff cites did show decreased temperature and sensation (Doc. 12, PageID 1111, citing Doc. 8-7, PageID 502), it is one of only a few examinations that showed sensory issues in the right hand; most other examinations showed no significant abnormalities. (*Compare* Doc. 8-7, PageID 501, 600; Doc. 8-8, PageID 970; *with* Doc. 8-7, PageID 520-21, 549, 584, 617 Doc. 8-8, PageID 829, 861, 867, 869, 873, 875 877, 879.) The ALJ appropriately weighed all of this evidence, and his conclusion that Plaintiff did not have any manipulative limitations is supported by substantial evidence.

Plaintiff argues that the ALJ "play[ed] doctor" because he "reject[ed] not only objective findings from MRIs but also physical examinations from Plaintiff's treating physicians that were objective in nature and substitute[ed] his own interpretation of the evidence." (Doc. 12, PageID 1111.) But the ALJ is required to evaluate the medical evidence to determine whether Plaintiff is disabled. *See* 20 C.F.R. § 416.945(a)(3); *Webb v. Comm'r of Soc. Se*c., 368 F.3d 629, 633 (6th Cir. 2004) ("[T]he ALJ is charged with the responsibility of evaluating the medical evidence"); *Coldiron v. Comm'r of Soc. Sec.,* 391 Fed. App'x. 435, 439 (6th Cir. 2010) ("[T]he ALJ—not a physician—ultimately

8

determines a claimant's RFC"). The ALJ did not "improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding." *Coldiron*, 391 Fed. App'x at 439.

Plaintiff's cited case of *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) does not support her position. (Doc. 12, PageID 111-12). The ALJ in *Simpson* had rejected a treating physician's medical opinion, finding it to be "so extreme as to be implausible" and stating that "it is inconceivable that this claimant who has had pain due to pelvic adhesions with otherwise normal examinations would be completely unable to move or do anything at all." 344 F. App'x at 194. The Sixth Circuit held that the ALJ erred because he "substituted Dr. Bonyo's medical opinion with his own in determining the degree of pain resulting from the condition from which Simpson suffers, and did not merely rely upon her testimony as to her daily activities or another doctor's testimony as to her condition." *Id. Simpson* is inapplicable because no medical source in this case opined that Plaintiff requires any manipulative limitations.

Plaintiff also asserts that the ALJ erred in his analysis of the State agency medical consultants' findings. (Doc. 12, PageID 1113.) However, the State agency consultants opined that Plaintiff did ***not*** have any manipulative limitations. (Doc. 8-3, PageID 126, 143.) Moreover, the ALJ found that the State agency consultants' findings were only "somewhat persuasive" and determined that Plaintiff was more limited than they had suggested. (Doc. 8-2, PageID 56). The ALJ's findings are based on substantial evidence. Moreover, the ALJ was not required to discuss Plaintiff's manipulative abilities again in this part of the decision.

9

Finally, Plaintiff argues that the ALJ did not fully develop the record. (Doc. 12, PageID 1113-14.) An ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary. *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (citing 20 C.F.R. § 404.1517). The regulations "do not require an ALJ to refer a claimant to a consultative specialist, but simply grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986).

This Court agrees with Defendant that the record in this case contained ample evidence for the ALJ to make findings about Plaintiff's medical condition, including her upper extremities. *See Landsaw,* 803 F.2d at 214. Although the record does not contain an EMG report, there is no evidence that a provider thought that one was necessary. (*E.g.,* Doc. 8-7, PageID 695-96.) The record contains treatment notes from two neurologists. These notes reflect numerous physical examinations that documented only a few intermittent abnormalities of the upper extremities and were otherwise relatively normal. (*Compare* Doc. 8-7, PageID 501, 600; Doc. 8-8, PageID 970; *with* Doc. 8-7, PageID 520-21, 549, 584, 617 Doc. 8-8, PageID 829, 861, 867, 869, 873, 877, 879.) Based on the evidence in the record, the ALJ did not err by failing to develop the record further.

## VI. CONCLUSION

Substantial evidence supports the ALJ's RFC. The ALJ did not err by failing to include additional manipulative limitations in the RFC. The ALJ also did not err in his analysis of the State agency medical consultants' findings or by not developing the record. Plaintiff's assertions to the contrary are without merit and are overruled.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Statement of Errors (Doc. 12) is OVERRULED;

2. The Court AFFIRMS the Commissioner's non-disability determination; and

3. The case is terminated on the Court's docket.

*Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge